IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:10-CV-232-FL

| | |
|---|---|
| GENEVA S. BEASLEY, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-14, DE-16] pursuant to Fed. R. Civ. P. 12(c). Plaintiff Geneva S. Beasley ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends /denying Plaintiff's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Plaintiff filed an application for a period of disability, DIB and SSI on 15 April 2003, alleging disability beginning 17 December 2002. (R. 17, 534). Both claims were denied initially and upon reconsideration. (R. 17). Plaintiff's hearing was initially postponed because Plaintiff was unable to attend due to her incarceration. *Id.* Plaintiff's hearing was postponed for a second time

when counsel could not locate her. *Id.* At the third scheduled hearing, for which Plaintiff did not appear, Administrative Law Judge ("ALJ") Gregory J. Wilson determined Plaintiff was not an essential witness and proceeded with the hearing. (R. 17-18). On 27 April 2006, ALJ Wilson issued a decision denying Plaintiff's request for benefits. (R. 14-32). The Appeals Council denied Plaintiff's request for review. (R. 636). Plaintiff timely filed a civil action on 15 May 2007 and on 16 June 2008, the U.S. District Court remanded the case for further proceedings ("June 2008 Remand Order"). (R. 635).

On 5 May 2009, ALJ Larry Miller issued an unfavorable decision. (R. 585-604). Upon Plaintiff's request for review of ALJ Miller's decision, the Appeals Council remanded the case to ALJ Nicole S. Forbes-Schmitt for further administrative proceedings. (R. 578-80). ALJ Forbes-Schmitt held a hearing on 27 May 2010, at which Plaintiff was represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 724-37). On 16 June 2010, ALJ Forbes-Schmitt issued a decision denying Plaintiff's claims. (R. 531-44). On 22 September 2010, the Appeals Council denied Plaintiff's request for review of the June 2010 administrative decision. (R. 521-23). Plaintiff then commenced the instant action, seeking judicial review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence,

shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

3

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2), 416.920a(e)(2).

In this case, Plaintiff contends the ALJ's failed to comply with the court's June 2008 Remand Order directing proper consideration of evidence impacting Plaintiff's RFC and the VE's testimony. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 4, 7.

## FACTUAL HISTORY

### I.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. At step one, the ALJ found Plaintiff was no longer engaged in substantial gainful employment. (R. 536). Next, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease ("DDD") of the lumbar spine, post traumatic stress disorder ("PTSD"), major depressive disorder, dysthymia, a personality disorder and substance abuse. (R. 537). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental impairments have resulted in moderate

4

limitations in her activities of daily living, social functioning and concentration, persistence and pace with no episodes of decompensation. (R. 537).

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform light work,[1] frequently use foot controls bilaterally, occasionally climb, balance, stoop, kneel, crouch and crawl, and perform simple, repetitive tasks. (R. 537-38). The ALJ noted, however. that Plaintiff "cannot interact with the public or more than occasionally interact with co-workers" and should not be required to perform any complex decisionmaking tasks, deal with constant change or deal with crisis situations. (R. 538). In making this assessment, the ALJ found Plaintiff's statements about her limitations not fully credible. (R. 539).

At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of her past relevant work. (R. 542). Nonetheless, at step five, upon considering Plaintiff's age, education, work experience and RFC, the ALJ determined Plaintiff is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 543).

## II. Plaintiff's Testimony at the Administrative Hearing

At the most recent administrative hearing, Plaintiff, thirty years old, testified about her past relevant work only, which included preparing hotdogs at a hotdog stand and working as a

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

housekeeper and cashier. (R. 731).

At a previous hearing held on 20 April 2009, Plaintiff testified that she had completed the eighth grade and had been enrolled in both regular and special education courses. (R. 689-90). Plaintiff testified that she is unable to work due to constant right side lower back pain that radiates to her legs, ankles and feet which is exacerbated with sitting or standing. (R. 696-97,705). Plaintiff experiences daily numbness, tingling and swelling in her legs and stated that there are days in which she cannot walk. (R. 696-97). Plaintiff spends the majority of her time lying down and must elevate her legs "every hour or so" when sitting. (R. 698). Plaintiff testified that her back pain has worsened over the last six or seven years in that she can feel her bones grinding against one another and experiences much difficulty in bending over to pick items off the floor. (R. 699-700). Plaintiff also experiences pain in her neck, shoulders and right hand and testified to dropping items with her right hand. (R. 699). Plaintiff testified to being treated for PTSD. (R. 704). Plaintiff stated that she isolates herself, cries daily and becomes sweaty, nervous and angry around people. (R. 703-04). According to Plaintiff, as a result of her mental impairment, Plaintiff experiences both short- and long-term memory difficulties. (R. 706).

Plaintiff testified that she can sit for five minutes at a time and stand for ten minutes at a time. (R. 701). Plaintiff can walk up to one mile; however, after doing so, she must rest for up to three days. (R. 701). Plaintiff tries to rake the yard five minutes to ten minutes at time. (R. 697). Plaintiff testified to experiencing difficulty climbing stairs because her legs "lock up." (R. 705). Plaintiff relies on a non-prescription cane for balance. (R. 706). Plaintiff takes over-the-counter medications for pain relief as she is unable to afford medical care or prescription medication. (R. 697, 701-02). Plaintiff testified to smoking marijuana and drinking alcohol two to three times per

month to alleviate her pain. (R. 702). Plaintiff testified that she had not used cocaine in six years. *Id.*

### III. Vocational Expert's Testimony at the Administrative Hearing

Arthur Schmitt testified as a VE at the most recent administrative hearing. (R. 733-737). After the VE's testimony regarding Plaintiff's past work experience (R. 734), the ALJ posed four hypotheticals. First, the ALJ asked whether an individual of the same age and with the same education and work experience as Plaintiff limited to light work involving simple, repetitive tasks and requiring frequent use of both lower extremities for foot controls, occasional climbing, balancing, stooping, kneeling, crouching and crawling and only occasional interaction with coworkers could perform Plaintiff's past relevant work. (R. 734). The VE testified the individual could perform the housekeeping and fast food positions but not the cashier position. *Id.* Second, the ALJ asked whether the same individual could perform Plaintiff's past relevant work if limited to light work involving simple, repetitive tasks that allowed for the ability to sit and stand at will, required frequent stooping and occasional interaction with coworkers, but required no interaction with the general public, complex decision making tasks or crisis management. (R. 734-35). The VE testified that while the hypothetical individual could not perform any of Plaintiff's past relevant work, the individual could perform work as a tobacco sampler (DOT # 529.587-022), storage facility clerk (DOT# 295.367-026) and coupon recycler (DOT #290.477-010). (R. 735). Third, the ALJ asked whether an individual "who becomes psychotic" on the job, even occasionally endangers her life and others," regardless of any exertional limitations, would be tolerated in any employment situation, to which the VE responded in the negative. *Id.* Finally, the ALJ asked whether an

individual who persists with Global Assessment of Functioning ("GAF") scores[2] below 50 and demonstrates serious restrictions and limitations in her ability to maintain social functioning and to maintain concentration, persistence and pace, regardless of any exertional limitations, is inconsistent with competitive employment. (R. 736). The VE responded in the affirmative and explained such characteristics would eliminate all jobs. *Id.* The VE testified that his testimony, with the exception of the sit/stand option, was consistent with the DOT. *Id.*

## DISCUSSION

I. **The ALJ complied with the court's June 2008 Remand Order.**

Plaintiff contends the ALJ did not address the issues raised by the court in its June 2008 Remand Order. Pl.'s Mem. at 4, 8. In particular, Plaintiff contends that prior to determining Plaintiff's RFC, the ALJ failed to address (1) observations made by Mohammed Y. Abu-Salha, M.D., a state agency consultative examiner, and (2) "the relevance of Plaintiff's three GAF scores." *Id.*; *see also* June 2008 Remand Order (R. 638). Plaintiff contends further that the ALJ ignored Social Security Ruling ("S.S.R.") 96-8p. Finally, Plaintiff contends the ALJ failed to "address the relevance" of the GAF scores in the hypothetical questions presented to the VE. *See id.* at 4.

A. <u>The ALJ's RFC finding is supported by substantial evidence.</u>

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by her physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *5, 1996 WL 374184, at *1. The RFC assessment is based on all the relevant medical and other evidence in the record and may include a

---

[2] The GAF scale ranges from zero to one-hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV"), 32 (4th ed. 1994).

claimant's own description of limitations arising from alleged symptoms.[3] 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *6, 1996 WL 374184, at *5. The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *21, 1996 WL 374184, at *7.

In the June 2008 Remand Order, the district court faulted the ALJ for failing to discuss relevant medical evidence "in coming to the conclusion that Plaintiff had an RFC for light work." *See* June 2008 Remand Order (R. 638). In particular, the district court found that the ALJ failed to

> address Dr. Abu-Salha's observation that Plaintiff functions at a psychotic level when she gets aggravated and '[h]er judgment becomes so impaired that she may endanger her life or others.' Also absent from the [RFC] evaluation or hypothetical question is the relevance of Plaintiff's three GAF scores. Between May and July of 2003, Plaintiff received GAF scores of [30], [47], and [45]. Instead, the ALJ focuses on an April 30, 2003, examination in which Plaintiff was described as alert and having a normal mental status to the exclusion of this later-in-time evidence.

June 2008 Remand Order (R. 638). Subsequent to a second ALJ decision, on 22 October 2009, the Appeals Council remanded the case, finding the ALJ

> did not address Dr. Abu-Salha's observations nor does the hearing decision indicate what weight was given to Dr. Abu-Salha's report. Although the hearing decision mentions the three GAF scores that were given between May and July of 2003, except for the testimony of the medical expert that 'with appropriate treatment the claimant's condition would be expected to improve,' there is no objective evidence showing that the claimant's condition has improved. Accordingly, the Council concludes that additional development and consideration are warranted.

---

[3] Contrary to Plaintiff's position, Plaintiff "bears the burden of production and proof during the first four steps of the [sequential evaluation process]," which includes Plaintiff's RFC. *Pass*, 65 F.3d at 1203; *see* 20 C.F.R. §§ 404.1545, 416.945 ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.")

9

(R. 579). In effectuating the district court's June 2008 Remand Order, the Appeals Council explicitly stated upon remand the [ALJ] will, *inter alia*,

> Give further consideration to the claimant's maximum [RFC] during the periods at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). . . . The [ALJ] shall specifically consider the observations of Dr. Abu-Salha and any nonexamining source opinions in accordance with [the regulations] . . . and explain the weight given to such opinion evidence. . . .
>
> [Ensure] [t]he hypothetical questions [] reflect the specific capacity/limitations established by the record as a whole.

(R. 579).

1. *Plaintiff's GAF Scores*

In the most recent decision, the ALJ noted that treatment records in 2003 from the Southeastern Regional Mental Health Center ("SRMHC") included GAF scores of 45 to 47.[4] In accordance with the June 2008 Remand Order, the ALJ acknowledged the relevance of these scores and in particular, that they indicate "serious symptoms." According these scores "limited weight," the ALJ explained they are

> inconsistent with findings upon examination, the claimant's treatment history and the claimant's lack of treatment following 2003. Of note, the claimant did not apparently require the use of any medication beyond Lexapro for a limited period of time and did not require emergency room services of hospitalization. Additionally, she was able to work on a limited basis following her alleged onset date.

(R. 540). As the ALJ observed, the 28 July 2003 treatment note from SRMHC – the latest medical record indicating mental health treatment – indicates Plaintiff had an intact memory, good concentration, a full affect and appropriate insight and judgment. (R. 467). Plaintiff faults the ALJ

---

[4] A GAF score between 41 and 50 indicates "[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning . . . ." DSM-IV at 32 (bold typeface omitted).

for not explicitly noting, however, that the July 28th record also characterizes Plaintiff's mood as "depressed and anxious." *See* Pl.'s Mem. at 5. Plaintiff criticizes the ALJ further for failing to explicitly discuss the information found in the 16 July 2003 treatment record under the captions "History of Present Problem," "Vocational/Educational History," and "Mental Status." *Id.* at 5-6.

Plaintiff, however, has failed to explain how the omission of this evidence within the ALJ's discussion is an omission of "obviously probative" evidence. *See White v. Astrue*, No. 2:08-CV-20-FL, 2009 U.S. Dist. LEXIS 60309, at *11, 2009 WL 2135081, at *4 (E.D.N.C. July 15, 2009). The ALJ is not required to discuss all evidence in the record. *See, e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility determination); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Indeed, "[t]o require an ALJ to refer to every physical observation recorded regarding a Social Security claimant in evaluating that claimant's . . . alleged condition[s] would create an impracticable standard for agency review, and one out of keeping with the law of this circuit." *White*, 2009 U.S. Dist. LEXIS 60309, at *11-12, 2009 WL 2135081, at *4. Rather, the ALJ must "provide [this court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517.

Here, the ALJ's summary of Plaintiff's medical record "enable[s] . . .[this court] to conclude that [the ALJ] considered [her] medical condition as a whole," *see Dyer*, 395 F.3d at 1211, including

11

findings by medical personnel with the SRMC. The ALJ explicitly referenced the July 16th and July 28th treatment records, noted Plaintiff's GAF scores found within the "Diagnosis" headings therein and conceded that these scores indicated "serious symptoms." (R. 540-42). The ALJ discussed also the consultative examination of Dr. Abu-Salha. Finally, the ALJ noted that the evidence of record fails to indicate any subsequent mental health treatment, emergency room services or hospitalization for her mental impairment.[5] (R. 542).

"Although the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, . . . .[the ALJ] is not required to function as the claimant's substitute counsel . . . ." *Bell v. Chater*, No. 95-1089, 1995 U.S. App. LEXIS 14322, at *12, 1995 WL 347142, at *4 (4th Cir. Jun. 9, 1995) (unpublished table decision) (citing *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994)) (internal citations and quotations omitted). Ultimately, Plaintiff carries the burden of establishing a *prima facie* entitlement to benefits and bears the risk of nonpersuasion. *Id.* (internal citations and quotations omitted); *see also* 20 C.F.R. § 404.1512(c) ("[Claimant] must provide evidence . . . showing how the impairment(s) affects . . . functioning . . . ."). Plaintiff has failed to carry her burden in demonstrating how the omitted evidence impacts the ALJ's RFC analysis.

---

[5] The ALJ noted that while Plaintiff blamed her lack of treatment and medication on financial difficulties, "there is no evidence [] indicat[ing] . . . [Plaintiff] ever attempted to significantly avail herself of no cost to low cost treatment or prescription drug programs available within her surrounding community." (R. 539). The inability to afford medical treatment is a sufficient reason for infrequent medical visits. S.S.R. 96-7p, 1996 WL 374186, at *8; *see also Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (holding it was improper to consider a disability claimant's failure to seek treatment in determining whether an impairment was severe when the failure was justified by lack of funds). Here, Plaintiff does not dispute the ALJ's finding and indeed, cites no evidence indicating a difficulty in obtaining medical assistance or medication due to cost.

2. *Observations by Dr. Abu-Salha*

Second, the ALJ's decision indicates Dr. Abu-Salha's evaluation and findings therein were considered at length, including Plaintiff's very poor attention and concentration, impaired problem solving, frustration tolerance, impulse control and an inability to handle stress as well as the "psychotic" remark noted in the June 2008 Remand Order. (R. 395, 540). However, the ALJ accorded Dr. Abu-Salha's opinion "limited weight," explaining

> the limitations [found by Dr. Abu-Salha] were generally given based on the claimant's subjective complaints and not findings upon examination or the weight of the evidence. Indeed, treatment notes indicate that the claimant did not require mental health treatment following 2003, generally required limited treatment and a trial of medication in 2003 and was never hospitalized or treated at the emergency room as a result of her mental health condition. Moreover, subsequent treatment notes in 2003 indicate that the claimant had an intact memory, good concentration, a full affect, an appropriate insight and judgment. Treatment notes fail to indicate any psychotic temper or other behavior problems upon examination.

(R. 540); *see also* (R. 467-68, 475). Observing that Dr. Abu-Salha was "selected by the State Agency, thus vouched for by Defendant," Plaintiff apparently argues first that Defendant is obligated to accept Dr. Abu-Salha's opinions. *See* Pl.'s Mem. at 9. Second, Plaintiff states further that the ALJ's discussion of Dr. Abu-Salha's opinion indicates the ALJ essentially found "that Dr. Abu-Salha did not perform his task properly." *Id.* at 10.

At the outset, the court notes that an ALJ is under no obligation to accept any medical opinion. *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). "Findings of fact made by State agency . . . consultants . . . regarding the nature and severity of an

13

individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the [ALJ] and Appeals Council levels of administrative review." S.S.R. 96-6p, 6 SSR LEXIS 3, at *1, 1996 WL 374180, at *1. Moreover, when considering the findings of state agency consultants, the ALJ must

> evaluate the findings using relevant factors . . . , such as the [consultant's] medical specialty and expertise in [the Social Security Administration's] rules, the supporting evidence in the case record, supporting explanations provided by the [consultant], and any other factors relevant to the weighing of the opinions.

20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). The ALJ must explain the weight given to these opinions in his decision. *Id.*; *see also* SSR 96-6p, 1996 WL 374180, at *1.

Here, the ALJ thoroughly summarized the Dr. Abu-Salha's opinion, assigned a weight thereto and explained the rationale for said weight. Moreover, the ALJ complied with the court's directive in its June 2008 Remand Order to address the remark in Dr. Abu-Salha's report that Plaintiff functions at a psychotic level. In particular, in discussing Dr. Abu-Salha's remarks about Plaintiff functioning at a psychotic level, the ALJ characterized the remarks as

> a reiteration of [Plaintiff's] subjective complaints [and not an opinion]. [Dr. Abu-Salha] entitled it 'psychotic reaction' and it was not included in his conclusion at the end of the report. There is no evidence in the record of the claimant experiencing psychosis when aggravated, other than her allegations. She says she cursed somebody out at work and/or became dangerous, but no support was offered for these allegations by way of an incident reports [sic] from an employer, police record or other source.

(R. 540). The court finds the ALJ's discussion of Dr. Abu-Salha's "psychotic reaction" notes appropriate and supported by substantial evidence. Indeed, as Defendant notes, Dr. Abu-Salha's diagnoses include "[m]ajor depressive disorder, recurrent and severe *without psychosis*" which supports the ALJ's determination that Dr. Abu-Salha's "psychotic reaction" remarks were not clinical observations but rather merely a documentation of Plaintiff's statements.

Second, in criticizing the ALJ's rationale for discounting Dr. Abu-Sahla's opinion, Plaintiff essentially contends that the ALJ improperly weighed the evidence before her. However, the court's duty is to determine if substantial evidence supports the ALJ's conclusions – not to reweigh conflicting evidence. *See Mastro*, 270 F.3d at 176 (citation omitted). The ALJ thoroughly summarized Dr. Abu-Sahla's findings upon examination and properly noted that much of Dr. Abu-Sahla's opinion is simply a documentation of Plaintiff's complaints.

3. *The ALJ assessed Plaintiff's limitations in accordance with S.S.R. 96-8p.*

Plaintiff contends the ALJ ignored S.S.R. 96-8p. Plaintiff's argument is limited to quoting at length from this regulation – no discussion is provided. Pl.'s Mem. at 7.

Social Security Ruling 96-8p states the "RFC assessment must . . . assess [the individual's] work-related abilities on a function-by-function basis." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *2, 1996 WL 374184, at *1; *see also* 20 C.F.R. § 404.1545(b)-(d). The functions considered, where applicable, include physical,[6] mental[7] and any other[8] abilities affected by an individual's impairment. *See* 20 C.F.R. § 404.1545 (b)-(d). In this case, contrary to Plaintiff's assertions, the ALJ considered the impact of Plaintiff's DDD and mental impairment on her functioning ability.

---

[6] Physical abilities include "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)...." 20 C.F.R. §§ 404.1545(b), 416.945(b).

[7] Mental abilities include "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting...." 20 C.F.R. §§ 404.1545(c), 416.945(c).

[8] In defining "other abilities," the regulations provide "[s]ome medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities." 20 C.F.R. §§ 404.1545(d), 416.945(d).

15

With respect to mental abilities impacted by Plaintiff's impairments, the ALJ found Plaintiff was limited to performing simple, repetitive tasks, with "no interaction with the public or more than occasional interaction with co-workers," and should not be required to perform any complex decisionmaking tasks, deal with constant change or deal with crisis situations. (R. 542). As explained in detail above, the ALJ's mental RFC finding is supported by substantial evidence. With respect to physical abilities impacted by Plaintiff's impairments, the ALJ noted the following upon reviewing Plaintiff's medical records: no weakness or parasthesias of Plaintiff's lower extremities (R. 383), negative straight leg raising (R. 383, 387), no gait deviation (R. 384), mild pain and muscle spasms of her back (R. 384), decreased range of motion of the lumbar spine (R. 387, 396), full range of motion of all extremities without tenderness or edema (R. 541), intact strength and grip, the ability to grasp, manipulate small objects, reach overhead, squat, rise and move about well (R. 387) and mild to moderate muscle spasms (R. 673). (R. 541). The ALJ noted further that while Plaintiff was referred to physical therapy for her back condition, she did not pursue such treatment. (R. 384, 541). Upon considering the evidence, the ALJ found Plaintiff is limited to light work with no more than frequent use of foot controls bilaterally and occasional climbing, balancing, stooping, kneeling, crouching and crawling. (R. 541).

Based on the foregoing, this court finds that the ALJ complied with the June 2008 Remand Order and that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained her findings and her rationale in crediting the evidence and applied the correct legal standards in evaluating Paintiff's RFC. Accordingly, Plaintiff's argument as to this issue is without merit.

B.   The ALJ properly relied on the testimony of the vocational expert.

Plaintiff contends the ALJ failed to "address the relevance" of the GAF scores in the hypothetical questions presented to the VE. *Id.* at 4. Plaintiff argues further that the ALJ's "questions to the [VE] [were] based on his RFC pulled from thin air," and thus "were of no value." Pl.'s Mem. at 8.

The purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). As such, hypothetical questions posed to a VE must accurately set forth all of a claimant's physical and mental impairments. *Id.* "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir. 1992). The corollary to this rule is that the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005) (holding a hypothetical valid because it adequately reflected claimant's characteristics as found by the ALJ); *Ehrhart v. Sec'y, Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) (noting "the hypothetical question posed by the ALJ was proper because it reflected [claimant's] impairments to the extent that the ALJ found them supported by evidence in the record"). If the ALJ does not believe that a claimant suffers from one or more claimed impairments, and substantial evidence supports that conclusion, then the ALJ does not err if he fails to include those impairments in his questioning of the VE. *Sobania v. Sec'y, Health & Human Servs.*, 879 F.2d 441 (8th Cir. 1989) (explaining "the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ"); *McPherson v. Astrue*, 605 F. Supp. 2d 744, 761 (S.D. W. Va. 2009) ("The ALJ is

17

under no duty to present the VE with hypothetical questions that include [claimant's] claimed impairments if the ALJ has found those impairments to be not severe or not credible.").

In this case, the ALJ posed four hypotheticals to the VE, one of which included an assumption that the individual "persists with GAF scores below 50 and demonstrates serious restrictions and limitations in [her] ability to maintain social functioning." (R. 736). However, the ALJ ultimately found that Plaintiff's GAF scores deserved minimal weight – a finding supported by substantial evidence. The ALJ properly relied on the VE's testimony that a hypothetical individual of the same age and with the same education and work experience as Plaintiff and with the RFC as determined by the ALJ could perform unskilled work existing in significant numbers in the national economy. Accordingly, Plaintiff's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Plaintiff's Motion for Judgment on the Pleadings [DE-14] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-16] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 17th day of October, 2011.

                                                Robert B. Jones, Jr.
                                                United States Magistrate Judge