IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:10-CV-232-FL

| | |
|---|---|
| GENEVA S. BEASLEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) ORDER<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DE # 14, 16). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Robert B. Jones, Jr. entered memorandum and recommendation ("M&R") wherein he recommends that the court deny plaintiff's motion, grant defendant's motion, and uphold the final decision of the Commissioner of Social Security ("Commissioner"). Plaintiff timely filed objection to the M&R to which defendant responded in opposition. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge as set forth herein.

## BACKGROUND

Plaintiff filed an application for Supplemental Security Income ("SSI") and disability insurance benefits ("DIB") on April 15, 2003, alleging a disability onset date of December 17, 2002. Her claims were initially denied and upon reconsideration. Plaintiff's hearing was initially postponed because she was unable to attend due to her incarceration. Plaintiff's hearing was

postponed a second time when her counsel could not locate her. At the third scheduled hearing, the administrative law judge ("ALJ") determined plaintiff was not an essential witness, and proceeded with the hearing. On April 27, 2006, ALJ Gregory Wilson issued decision denying plaintiff's requests for benefits. The Appeals Council denied plaintiff's request for review.

Plaintiff timely filed a civil action on May 15, 2007, and on June 16, 2008, the district court remanded the case for further proceedings. (R. 635.)

On May 5, 2009, ALJ Larry Miller issued an unfavorable decision. Upon plaintiff's request for review, the Appeals Council remanded the case to ALJ Nicole S. Forbes-Schmitt for further administrative proceedings. (R. 578-80.) ALJ Forbes-Schmitt held hearing on May 27, 2010, at which plaintiff was in attendance and was represented by counsel. A vocational expert ("VE") appeared and testified. On June 16, 2010, ALJ Forbes-Schmitt issued decision denying plaintiff's claims. On September 22, 2010, the Appeals Council denied plaintiff's request for review of the June 2010, administrative decision. Thereafter, plaintiff commenced the instant action.

A detailed summary of the procedural and factual history of the case is found in the M&R. (See M&R 4-8.) Plaintiff does not object to the same, and as such, the factual history of the case set forth in the M&R is incorporated by reference herein.

## DISCUSSION

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

2

Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1)(C). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the

Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).[1]

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff was not engaged in gainful employment.[2] At step two, the ALJ found that plaintiff suffered from various impairments, including degenerative disc disease ("DDD") of the lumbar spine, post traumatic stress disorder ("PTSD"), major depressive disorder, dysthymia, a personality disorder, and substance abuse. However, at step three, the ALJ further determined that these impairments were not severe enough to meet or medically equal one of the impairments in the regulations. Applying the technique prescribed by the regulations, the ALJ found that plaintiff's mental impairments have resulted in moderate limitations in her activities of daily living, social functioning and concentration, persistence and pace with no episodes of decompensation.

Prior to proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work, frequently use foot controls bilaterally, occasionally climb, balance, stoop, kneel, crouch and crawl, and perform simple, repetitive tasks. The ALJ did note that plaintiff "cannot interact with the public or more than occasionally interact with co-workers" and should not be required to perform any complex decision making tasks, deal with constant change or deal with crisis situations. (R. 542.) In making this assessment, the ALJ found plaintiff's statements about her limitations not fully credible.

At step four, the ALJ then determined that plaintiff could not perform her past relevant work. However, at step five, the ALJ determined that plaintiff is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy.

---

[1] When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" set forth in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c), described in more detail in the M&R. (M&R 4.)

[2] The ALJ did note that plaintiff earned about $5,600.00 for seven months in 2007, however the work occurred almost five years following plaintiff's alleged onset date and was brief. The ALJ thus continued with the sequential evaluation. (R. 536.)

4

B.  Analysis

Plaintiff lodges four primary objections to the M&R. The first is that the magistrate judge incorrectly reviewed the ALJ's consideration of plaintiff's Global Assessment of Functioning ("GAF") scores. Plaintiff argues that the magistrate judge improperly reviewed the ALJ's reference to plaintiff's lack of mental health treatment after 2003. Second, plaintiff objects to the magistrate judge's consideration of Dr. Abu-Salha's report regarding plaintiff's mental health. Third, plaintiff objects to the ALJ's RFC finding. Fourth, plaintiff objects to the magistrate judge's conclusions regarding the ALJ's reliance on the testimony of the VE, specifically with regard to inconsistencies between the DOT and the VE's testimony.

1.  ALJ's Consideration of Global Assessment of Functioning ("GAF") Scores

Plaintiff objects to the magistrate judge's assessment of the ALJ's consideration of plaintiff's GAF scores.[3] First, plaintiff contends the ALJ failed to properly develop the record regarding plaintiff's inability to obtain mental health treatment in her community. (Pl.'s Obj. 2-3.) Plaintiff asserts that she testified at her 2009 administrative hearing that she could not afford treatment (R. 702), and that the inability to afford treatment cannot be used against her under the social security regulations. Plaintiff also argues that according to the regulations, specifically 20 C.F.R. § 410.640, the ALJs did not fulfill their duty to "fully and fairly develop the facts relative to a claim for disability benefits." (Id. at 3.)[4]

---

[3] As noted in the M&R, the GAF scale ranges from zero to one-hundred and considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." (M&R 8 n.2) (citing DSM-IV 32 (4th ed. 1994)).

[4] The regulation provides, "The [ALJ] shall inquire fully into the matters at issue and shall receive in evidence the testimony of witnesses and any documents which are relevant and material to such matters. If the [ALJ] believes that there is relevant and material evidence available which has not been presented at the hearing, the [ALJ] may adjourn the hearing or, at any time prior to the mailing of notice of the decision, reopen the hearing for the receipt of such evidence." § 410.640.

5

As a preliminary matter, plaintiff's reliance on 20 C.F.R. § 610.640 is misplaced. As defendant notes, that regulation governs the conduct of the administrative hearing under Title IV of the Federal Coal Mine Health and Safety Act for Black Lung Benefits. See 20 C.F.R. § 410.101 ("The regulations in this part 410 . . . relate to the provisions of part B (Black Lung Benefits) of title IV of the Federal Coal Mine Health and Safety Act of 1969 . . ."). Plaintiff's briefs acknowledge, nor is there any dispute, that plaintiff seeks social security and disability benefits under titles II and XVI of the Social Security Act. Regulations governing social security disability insurance benefits are contained in 20 C.F.R. § 404, while those governing supplemental security income disability benefits are contained in 20 C.F.R. § 416. See 20 C.F.R. § 404.1501 ("In order for you to become entitled to any benefits based upon disability or blindness or to have a period of disability established, you must be disabled or blind as defined in title II of the Social Security Act."); § 416.901 (same, "as defined in title XVI of the Social Security Act."); (Pl.'s Mem. Supp. Mot. J. On the Pleadings) (citing 20 C.F.R. § 404.1520 for the "sequential review" required under title II of the Social Security Act for a finding of disability); (R. 534.) The regulation plaintiff cites is not controlling in this case, as it does not correctly state the standard proscribed by the regulations for an ALJ's duty when determining whether plaintiff is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. (R. 534.)

The duty of the ALJ under the applicable regulations is to make the disability determinations following the proscribed, five-step, process. 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations state that it is the ALJ's responsibility to develop the claimant's complete medical history for at least the twelve (12) months preceding the month in which the claimant files the application unless information from an earlier period is necessary. See 20 C.F.R. § 404.1512(d), § 416.912(d). Plaintiff here makes no allegation that the ALJ did not properly develop the medical record; rather,

6

plaintiff attempts to cite an inapplicable regulation to shift plaintiff's burden of production and proof during the first four steps of the sequential evaluation process onto the ALJ. Specifically, as the magistrate judge noted, plaintiff bears the burden of production and proof during the first four steps of the sequential evaluation process. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). As noted by defendant, the ALJ is not required to function as the claimant's substitute counsel. Bell v. Chater, 57 F.3d 1065, *4 (4th Cir.1995) (table decision).

Plaintiff next objects to the magistrate judge's consideration of the ALJ's observations regarding plaintiff's mental health treatment. It is undisputed that the inability to afford medical treatment is a sufficient reason for infrequent medical visits. (M&R 12 n.5); Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986). Additionally, both parties cite SSR 96-7p, which provides that "[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to re-contact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue medical treatment in a consistent manner." SSR 96-7p at 7.

The magistrate judge cited this same authority and concluded that the ALJ properly considered plaintiff's lack of medical treatment for her mental impairment as part of the evidence of record. The magistrate judge noted that plaintiff did not dispute the ALJ's finding and cited no evidence indicating difficulty in obtaining medical assistance due to cost. Now, plaintiff objects to the magistrate judge's determination, suggesting that the ALJ had a duty to investigate or inquire about plaintiff's access to medical treatment, despite the fact that plaintiff offers no evidence aside

7

from a comment at her second administrative hearing that her financial resources were limited (R. 702.)

A review of the ALJ's findings reveals that the ALJ did not penalize plaintiff for not seeking treatment she could not afford; but rather considered the lack of treatment, including "lack of emergency room treatment or hospitalization for her condition" as evidence that her mental impairments did not rise to the level of a disability under the regulations. (R. 537.) This discussion does not focus on plaintiff's inability to seek treatment but rather the lack of medical evidence that plaintiff needed treatment for the impairment during the relevant time period. Additionally, the evidence in the record does not support plaintiff's assertion that she could not afford mental health treatment when the record reveals she did receive medical treatment for other issues, such as her degenerative disc disease. (R. 529.) See Viverette v. Astrue, 2008 WL 5087419 at *4-5 (E.D.N.C. 2008) (finding that ALJ did not impermissibly use plaintiff's inability to pay for treatment against her where the record suggested plaintiff could afford other treatment and underlying inference was that plaintiff did not need treatment for the impairment for which she did not seek treatment).

Also unavailing is plaintiff's reliance on SSR 82-59, which addresses the inability to afford *prescribed* treatment or the unavailability of free community resources as a justifiable cause for failure to follow the prescribed treatment. As defendant notes, this particular social security ruling is applicable only when certain conditions exist, including that the evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity and the evidence of record discloses that there has been a refusal to follow prescribed treatment. SSR 82-59 at 1. Neither of the cited conditions is present here, nor does plaintiff offer convincing argument to the contrary. See Cowger v. Astrue, 2010 WL 5631211 at *17 (N.D.W.Va. 2010) (distinguishing claimant's case from one in which plaintiff could not afford to pay for prescribed treatment where

8

the claimant had not refused treatment for an identified medical condition).

The court next turns to plaintiff's overall objection - that the magistrate judge incorrectly reviewed the ALJ's consideration of plaintiff's GAF scores. Plaintiff argues that a GAF of 50 is a "benchmark of employability" recognized by courts. Plaintiff argues that because her GAF scores in the record are below 50, the ALJ failed to properly consider the impact of the scores. The ALJ accorded the scores limited weight, finding them inconsistent with the lack of treatment for mental health issues after 2003. The magistrate judge noted that plaintiff's GAF scores ranged from 45 to 47, which score would indicate serious symptoms or serious impairment in social, occupational, or school functioning. (M&R 10 n.4.) The magistrate judge ultimately found that the ALJ considered the medical record as a whole in determining that the GAF scores were not supported by the evidence of record.

As discussed in more detail herein, the court finds no error in the ALJ's consideration of the evidence in the record or in the magistrate judge's assessment of the same. Furthermore, where plaintiff asserts that a GAF of 50 is a "benchmark of employability," authority cited by defendant would suggest otherwise.

A GAF score may help an ALJ assess mental residual functional capacity, but it is not raw medical data. The Sixth Circuit has held that a GAF score in the high 40s to mid 50s, by itself, does not preclude an individual from doing all jobs. See Smith v. Comm'r of Social Sec., 482 F.3d 873, 877 (6th Cir. 2007). The court's review of the case law reveals that it is varied as to the exact import of GAF scores and what they indicate or trigger on the part of the ALJ. Of note, however, is the fact that the Social Security Administration has declined to endorse GAF scores for use in Social Security and SSI disability programs, and has indicated that the scores have no direct correlation to the severity requirements of the mental illness listings. See, e.g. Kennedy v. Astrue, 247 F. A'ppx 761,

9

766 (6th Cir. 2007); Moore v. Astrue, 2011 WL 5117165 at *10 (N.D.W.Va. 2011). While, as plaintiff notes, some courts consider GAF scores to be relevant evidence of a claimant's ability to work, neither agency regulations nor case law requires an ALJ to determine the extent of a claimant's mental disability based entirely on GAF scores. See Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010); see also Love v. Astrue, 2011 WL 4899989 at *6 (W.D.N.C. 2011) (rejecting claimant's argument that a GAF or 50 or below is a benchmark of employability in the Social Security arena).

Considering the foregoing, plaintiff's assertions that a GAF of 50 has been used by courts "repeatedly" as a benchmark for employability is unconvincing. The court agrees with defendant that the case law plaintiff cites does not create the clear benchmark suggested, and in fact reveals that the use of the GAF in evaluating mental health is developing in the case law. Notably, plaintiff fails to cite any precedent from the Fourth Circuit on this issue, while other district courts from this circuit have refused to adopt the GAF of 50 as an employability benchmark. See Love, 2011 WL 48999989 at *6. The court agrees with defendant that to do so would exceed its authority as the reviewing court, which, as noted above, is not to create new standards by which mental health is evaluated by an ALJ, but to uphold the "factual findings of the [Commission] if they are supported by substantial evidence and were reached through application of the correct legal standard," Mastro, 270 F.3d at 176.

Considering the foregoing, the court finds the ALJ properly weighed the GAF scores in light of the substantial evidence of the record. (R. 540.) Plaintiff's objection to the magistrate judge's consideration of the ALJ's assessment of the GAF scores is overruled.

2. ALJ's Consideration of Dr. Abu-Salha

Plaintiff objects to the magistrate judge's assessment of the ALJ's consideration of Dr. Abu-Salha's opinion with regard to plaintiff's mental health. Plaintiff argues that the ALJ made an

10

unsupported rejection of Dr. Abu-Salha's medical opinion and supplanted her own opinion as to plaintiff's mental health, rendering a medical opinion based on expertise she did not possess.

The magistrate judge noted that the ALJ considered Dr. Abu-Salha's 2003 evaluation and findings at length. (R. 395, 540.) The ALJ ultimately declined to give Dr. Abu-Salha's opinion controlling weight, finding it was not supported by substantial evidence of record, particularly the fact that plaintiff did not require mental health treatment following 2003, and was never hospitalized or treated at an emergency room for her condition, and subsequent treatment notes indicated good concentration, full affect, appropriate insight and judgment. (R. 467, 540-41.)

Plaintiff does not dispute the magistrate judge's observations that the ALJ appropriately complied with the district court's 2008 remand, nor does plaintiff dispute that the ALJ summarized Dr. Abu-Salha's opinion, assigned a weight to it, and explained her rationale for doing so. Instead, plaintiff's objection rests on an assertion that the magistrate judge failed to find that the ALJ impermissibly substituted her own opinion for the medical opinion of Dr. Abu-Salha.

The court finds plaintiff's objection to be unfounded and makes its finding based on the same observations made by the magistrate judge. The ALJ did not substitute her opinion for Dr. Abu-Salha's, but rather considered Dr. Abu-Salha's treatment carefully, particularly noting that Dr. Abu-Salha's remarks were a reiteration of plaintiff's subjective complaints. (M&R 14.) This finding is further affirmed when one considers Dr. Abu-Salha's diagnoses, which includes "[m]ajor depressive disorder, recurrent and severe *without psychosis*" (Id.) (emphasis in original), which observation plaintiff does not address in her objections. (R. 395.) Essentially, plaintiff's argument that the ALJ substituted her opinion for Dr. Abu-Salha's is another way for plaintiff to argue that the ALJ improperly weighed the evidence, and as noted by the magistrate judge, that is not the court's role. Mastro, 270 F.3d at 176.

11

Lastly, plaintiff cites Jernigan v. Astrue, 2008 WL 4772202 (E.D.N.C. 2008) to suggest that the ALJ had an affirmative duty to request records regarding incident reports from employers, police records or other sources regarding plaintiff's alleged psychosis. The court finds the defendant's assessment of this argument to be correct. The Jernigan case dealt with medical records from claimant's treating physicians, specifically, notes, documents, signs, and symptoms of a specific impairment. Jernigan, 2008 WL 4772202 at *2. The present case is distinguishable where plaintiff does not assert that the ALJ failed to consider medical evidence, notes and observations from plaintiff's treating physicians, but rather argues that the ALJ had a duty to seek out possible reports regarding plaintiff's behavior from various agencies and organizations in her community. Jernigan does not stand for such a proposition and plaintiff cites no persuasive authority that such a requirement exists.[5]

3. ALJ's RFC Finding

Plaintiff's objection to the magistrate judge's assessment of the ALJ's RFC finding is unspecific. Plaintiff cites generally to her other arguments as support for the objection, but provides no specific argument. As such, the court need not address the objection, see Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). However, the court finds no error in the magistrate judge's conclusion that the RFC is supported by substantial evidence. The objection is overruled.

4. Reliance on Testimony of VE

Plaintiff's final objection asserts that the magistrate judge improperly found that the ALJ's reliance on the VE's testimony was appropriate. The objection is new, and was not raised in the

---

[5] The court again references its discussion of the burden of proof at steps one through four of the sequential evaluation, noted previously in this order. While ALJs have an obligation to collect certain medical evidence necessary for a fully developed factual record, the obligation does not extend as widely as plaintiff suggests here. See 20 C.F.R. § 20 C.F.R. § 404.1512(d), § 416.912(d).

12

briefings on the motions for judgment on the pleadings.[6] Plaintiff now argues that the ALJ improperly relied on the testimony of the VE with respect to two of the three positions that the VE noted were for an individual with plaintiff's abilities. The VE testified that given plaintiff's RFC, age, education, and work experience, and considering plaintiff's specific limitations, an individual with plaintiff's abilities could perform the requirements of occupations such as 1) tobacco sampler, 2) a storage facility clerk, and 3) a coupon recycler. (R. 543.) For each of these positions, the ALJ's opinion noted the Dictionary of Occupational Titles ("DOT") number,[7] the level of working (light), the specific vocation preparation ("SVP") level, and the number of jobs available nationally. (Id.) In her objections, plaintiff objects specifically to the ALJ's failure to inquire of and explain the inconsistency between the VE's recommendations of storage facility clerk and coupon recycler positions with various aspects of the positions plaintiff argues contradict the RFC. Plaintiff raises no objection to the recommendation of tobacco sampler.

The DOT's descriptions of each job include various ratings. Two ratings are at issue here. The first, general educational development ("GED") or "reasoning level," measures the aspects of education, formal and informal, required of the worker for satisfactory job performance. See DOT, App. C. § III. The second is the SVP, which measures the amount of lapsed time required by a typical worker to learn techniques, acquire information, and develop the facility needed for average performance in a specific job or worker situation. See DOT, App. C. § II. All of the positions noted

---

[6] In her motion for judgment on the pleadings, plaintiff's arguments regarding the RFC related primarily to alleged failure of the ALJ to address the relevance of plaintiff's GAF scores in the hypothetical questions. The magistrate judge found no merit in this argument, and plaintiff raises no specific objection to the magistrate judge's analysis.

[7] The DOT, published by the United States Department of Labor, provides detailed descriptions of almost all of the jobs existing in the national economy. The DOT rates the skill which each job requires and describes tasks that each job includes. The DOT is the commissioner's primary source of reliable job information and the Social Security Administration has taken administrative notice of the DOT. See 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). At the administrative hearing, the VE testified that his testimony was consistent with the DOT, with the exception of discussion of the sit/stand option. (R. 736.)

13

by the VE as available to plaintiff have a SVP level of two. The tobacco sampler position has a GED reasoning level of two, while the storage facility clerk and coupon recycler positions have a GED reasoning level of three. Plaintiff's objection and defendant's response lodge arguments as to whether the ALJ should give more weight to the SVP level or GED levels after determining, as here, an RFC that includes "a limitation to the performance of simple repetitive tasks, no interaction with the public or more than occasional interaction with co-workers; and limitation from performing complex decision making tasks, dealing with constant change, or dealing with crisis situations . . .". (R. 542.)

Upon review of the briefs, however, the court finds it unnecessary to engage in discussion of whether a SVP level of two for both the storage facility clerk and coupon recycler positions is impermissibly inconsistent with the ALJ's RFC finding, because defendant acknowledges that both of these positions require interaction with the public, which clearly contradicts the ALJ's RFC.[8] (R. 542.) As such, the court agrees with plaintiff that the VE's recommendations of storage facility clerk and coupon recycler were clearly inconsistent with the ALJ's RFC and failure to explain the inconsistency on the record was error.

However, such error was harmless. Plaintiff lodged no objection to the VE's recommendation of tobacco sampler, which has a GED reasoning level of two and a SVP level of two, and does not require interaction with the public. Because the VE provided one DOT job

---

[8] Both parties devote a portion of their briefs to argue whether the GED level or SVP level is more controlling when an ALJ, as here, has assessed a plaintiff's RFC to require simple, repetitive tasks. The court notes that defendant's arguments regarding SVP, specifically the discussion of the same in SSR 00-4p, cited by plaintiff, are somewhat persuasive. That social security ruling suggests that SVP levels of one or two correspond to unskilled work, defined in 20 C.F.R. §§ 404.1568 and 416.967, which appear consistent with the ALJ's RFC in this case. SSR 00-4p at *3. However, the court also notes that there is authority that GED reasoning levels are also to be taken into account when assessing consistency between the VE recommendations and the ALJ's RFC finding. See Lindsey v. Astrue, 2011 WL 2214779 at *4 (D.S.C. 2011) (noting that RFC limitations of simple, repetitive tasks are consistent with GED reasoning level two work); Hare v. Astrue, 2009 WL 873993 at *8 (2009) (finding no error when plaintiff alleged the VE did not understand the reasoning levels in the DOT, but suggesting the reasoning levels were appropriately considered nonetheless).

14

category on which the ALJ could rely for her finding at step five of the sequential evaluation, any error made by the VE regarding the storage facility clerk and coupon recycler positions was harmless. Burnette v. Astrue, 2009 WL 863372 at *5 (E.D.N.C. 2009). Plaintiff's objection on this point is overruled.

CONCLUSION

Upon *de novo* review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court ADOPTS the findings and recommendations of the magistrate judge in full, GRANTS defendant's motion for judgment on the pleadings (DE # 16), DENIES plaintiff's motion for judgment on the pleadings (DE # 14), and upholds the final decision of the Commissioner. The Clerk is directed to close this case.

SO ORDERED this the 3rd day of March, 2012.

LOUISE W. FLANAGAN
United States District Judge